UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| IN RE: WESTERN STATES WHOLESALE NATURAL GAS ANTITRUST LITIGATION | MDL 1566<br>2:03-CV-01431-PMP (PAL)<br>BASE FILE |
| J.P. MORGAN TRUST COMPANY, NATIONAL ASSOCIATION, in its Capacity as Trustee of FLI Liquidating Trust, | MDL 1566<br>2:05-CV-01331-PMP (PAL) |
| Plaintiff, | |
| v. | <u>O R D E R</u> |
| THE WILLIAMS COMPANIES, INC., et al., | |
| Defendants. | |

       Presently before this Court is Plaintiff's Motion to Alter or Amend Judgment Pursuant to Fed. R. Civ. P. 59(e) (2:05-CV-01331-PMP-PAL, Doc. #57), filed on January 19, 2007. Defendants filed an Opposition (2:05-CV-01331-PMP-PAL) on February 6, 2007. Plaintiff filed a Reply (2:05-CV-01331-PMP-PAL, Doc. #60) on February 16, 2007.

       Also before the Court is Plaintiff's Motion for Discovery and Continuance of Decision Pursuant to FRCP Rule 56(f) (2:05-CV-01331-PMP-PAL, Doc. #62), filed on April 25, 2007. Defendants filed a Joint Memorandum in Opposition to Plaintiff's Motion for Discovery and Continuance of Decision Pursuant to FRCP 56(f) (2:05-CV-01331-PMP-PAL, Doc. #66) on May 11, 2007. Plaintiff filed a Reply (2:05-CV-01331-PMP-PAL, Doc. #68) on May 23, 2007.

1    Also before the Court is Defendants' Request for Judicial Notice in Support of
2 Response to Court's Orders of April 3, 2007 (2:05-CV-01331-PMP-PAL, Doc. #65), filed
3 on April 25, 2007.  Plaintiff filed a Response (2:05-CV-01331-PMP-PAL, Doc. #68) and
4 Joint Evidentiary Objections (2:05-CV-01331-PMP-PAL, Doc. #67) on May 23, 2007.
5    On May 30, 2007, the Court conducted a hearing on the foregoing motions.

**I.    BACKGROUND**

7    On December 18, 2006, this Court entered an Order (2:05-CV-01331-PMP-PAL,
8 Doc. #53) granting Defendants' motion to dismiss based on the doctrines of field and
9 conflict preemption.  Central to the Court's Order was that Defendants possessed blanket
10 marketing certificates which subjected Defendants and their conduct to the Federal Energy
11 Regulatory Commission's ("FERC") jurisdiction under the Natural Gas Act ("NGA").
12 Believing no dispute existed regarding Defendants' possession of blanket marketing
13 certificates, the Court dismissed Plaintiff's antitrust claims.

14    On January 19, 2007, Plaintiff filed the present Motion to Alter or Amend
15 Judgment and Memorandum in Support of Motion to Alter or Amend Judgment arguing the
16 Court committed clear error because it based its decision on factual findings unsupported by
17 the record, the Court misinterpreted the scope of FERC's jurisdiction, the Court's past
18 complete preemption orders are inconsistent with its field preemption analysis in this case,
19 and the Court applied the wrong legal standard to its field preemption analysis.  Defendants
20 filed an Opposition to Plaintiff's Motion to Alter or Amend Judgment on February 6, 2007,
21 urging the Court to deny Plaintiff's motion.

22    On April 3, 2007, the Court issued an Order requesting Defendants to verify their
23 possession of blanket certificates during the relevant time period.  In response to the Court's
24 ///
25 ///
26 ///

April 3 Order, Plaintiffs[1] filed a joint motion requesting a hearing regarding Defendants' verification of blanket certificates and a motion for discovery pursuant to Federal Rule of Civil Procedure 56(f). On April 25, 2007, Defendants filed a response to the Court's April 3 Order explaining that Defendants possessed blanket marketing certificates by operation of law. Defendants also requested the Court take judicial notice of certain documents purportedly establishing Defendants' affiliations with natural gas pipelines or local distribution companies ("LDCs"). Defendants argue their affiliations with pipelines or LDCs provide an independent basis for FERC's jurisdiction over the gas marketing Defendants and therefore provide an alternative ground for dismissal.

## II.     LEGAL STANDARD

A court has "considerable discretion" when considering a motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e). Turner v. Burlington N. Santa Fe R. Co., 338 F.3d 1058, 1063 (9th Cir. 2003). Generally, such a motion "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." Carroll v. Nakatani, 342 F.3d 934, 945 (9th Cir. 2003). A litigant may not use a Rule 59(e) motion "to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." Id. Moreover, the losing party cannot use a Rule 59(e) motion as a vehicle to relitigate old matters. Brogdon v. Nat'l Healthcare Corp., 103 F. Supp. 2d 1322, 1338 (N.D. Ga. 2000).

///

///

---

[1] The Court's April 3 Order requested Defendants in this case and Defendants in Learjet, Inc. et al. v. Oneok, Inc. et al., 2:06-CV-0233-PMP-PAL to verify their possession of blanket marketing certificates because possession of blanket marketing certificates is an issue in both cases. Accordingly, Plaintiff in this case and Plaintiffs in the Learjet case responded to the Court's Order as well as Defendants' motions and submissions pertaining thereto.

## III. DISCUSSION

### A. Blanket Certificates

As stated in the Court's December 18 Order granting Defendants' motion to dismiss, pursuant to the NGA FERC has jurisdiction over matters relating to the transportation of natural gas in interstate commerce, the sale of natural gas in interstate commerce for resale, and the natural gas companies engaged in such transportation and sales. (Order at 8 [citing 15 U.S.C. § 717(b)].) Consequently, if Defendants are natural gas companies engaged in sales for resale within FERC's jurisdiction, even if those sales were not to Plaintiff, FERC has jurisdiction over Defendants and their alleged misconduct. Under section seven of the NGA, to engage in a sale for resale within FERC's jurisdiction, a natural gas company must have a certificate of public convenience and necessity issued by FERC. 15 U.S.C. § 717f(c)(1)(A). Pursuant to its authority under section seven of the NGA, FERC decided to issue blanket certificates authorizing pipelines and other persons selling natural gas to make wholesale sales at negotiated or market-based rates. See 18 C.F.R. § 284.284(a); 18 C.F.R. § 284.402(a). These "blanket certificates were issued by operation of the rule itself and there was no requirement for persons to file applications seeking such authorization." Amendments to Blanket Sales Certificate, 105 F.E.R.C. ¶ 61,217, at ¶ 11 (2003).

Based on the parties' filings, the Court addressed Defendants' motion to dismiss on the assumption that Plaintiff conceded Defendants possessed blanket marketing certificates and thus conceded Defendants engaged in sales for resale within FERC's jurisdiction during the relevant time period.[2] However, Plaintiff now moves the Court to

---

[2] In their Motion to Dismiss, Defendants stated they held blanket certificates and explained in depth the certificates' legal significance. (Defs.' Mot. to Dismiss & Mem. in Support of Mot. to Dismiss [2:05-CV-01331-PMP-PAL, Doc. #32] at 14-16.) In its Opposition, Plaintiff never disputed Defendants possessed blanket marketing certificates; instead Plaintiff attempted to minimize the certificates' legal import by stating "[t]he Court should not be misled by Defendants' attempt to make

4

1 alter or amend the December 18 Order, arguing it never conceded Defendants held blanket
2 marketing certificates or engaged in sales for resale within FERC's jurisdiction during the
3 relevant time period and the Court therefore erred by making a factual determination in
4 deciding a motion to dismiss.

5       Pursuant to FERC Order 644, FERC "issued blanket certificates to all persons
6 who are not interstate pipelines authorizing them to make jurisdictional sales for resale" and
7 that such issuance occurred "by operation of the rule itself," which meant "there was no
8 requirement for persons to file applications seeking such authorization." Id. Accordingly,
9 Defendants possessed blanket marketing certificate authority as a matter of law. However,
10 whether Defendants are natural gas companies under FERC's jurisdiction depends on
11 whether Defendants actually engaged in such sales for resale pursuant to their blanket
12 certificate authority.[3] Under the motion to dismiss standard, the Court must take as true the
13 allegations in the complaint and construe them in a light most favorable to the non-moving
14 party. Wyler Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998).
15 Because Plaintiff did not allege Defendants engaged in sales for resale within FERC's
16 jurisdiction ("jurisdictional sales") during the relevant time period, the Court committed
17 clear error in concluding Defendants engaged in such sales pursuant to their blanket

---

their certificates into more than they are. In the context of this state antitrust case, they are meaningless." (Pl.'s Resp. to Defs.' Mot. to Dismiss Based upon Filed Rate & Federal Preemption Principles [2:05-CV-01331, Doc. #38] at 23.) Based on the parties' statements, the Court concluded "[a]ll parties agree Defendants participated in the interstate natural gas market pursuant to FERC-issued blanket certificates" and proceeded to rule on the certificates' legal significance. (Order at 16.)

[3] If Defendants engaged in sales for resale within FERC's jurisdiction during the relevant time period, then FERC has jurisdiction over Defendants' alleged misconduct. While FERC did not expressly prohibit false reporting and wash trades during the relevant time period, it did so later in 2003 without any additional authorizing legislation from Congress. This demonstrates FERC always had the power to regulate the conduct of persons engaged in sales for resale subject to FERC's jurisdiction. However, FERC's promulgation of its Code of Conduct in 2003 was limited in scope and applied only to those persons making natural gas sales for resale in interstate commerce. See 18 C.F.R. § 284.403 (2003).

1  marketing certificate authority.

2  At the May 30 hearing and in their papers, Defendants advance a number of
arguments attempting to show they engaged in jurisdictional sales during the relevant time
period.  First, Defendants argue Plaintiff's Amended Complaint alleges Defendants
engaged in jurisdictional sales.  Paragraph 54 of the Amended Complaint states: "[t]he
companies that sold natural gas to plaintiff passed on the artificially inflated prices that they
paid for natural gas."  (Pl.'s Am. Comp. at 36.)  This sentence does not establish
Defendants engaged in jurisdictional sales.  Paragraph 54 appears to recognize sales for
resale occurred - i.e. "the companies that sold natural gas to plaintiff" purchased natural gas
from somebody else and then resold it to Plaintiff.  However, paragraph 54 does not allege
Defendants were the ones who sold natural gas to "the companies that sold natural gas to
plaintiff" or that those sales for resale were sales within FERC's jurisdiction.  Therefore,
the Amended Complaint does not allege Defendants engaged in jurisdictional sales during
the relevant time period.

Second, Defendants argue that by pleading Defendants engaged in "wash trades[4]"
and "churning,[5]" Plaintiff pleaded that Defendants engaged in jurisdictional sales because
wash trades and churning are by definition "sales for resale."  Defendants' assertion that
wash trades and churning are by definition sales for resale, even if true, does not mean the
alleged wash trades and churning occurred within FERC's jurisdiction because not all sales
for resale are jurisdictional sales.

---

[4] A "wash trade" is a prearranged offsetting trade of the same product between the same parties, which involves no net change in ownership and no economic risk.  Such trades create a false price for use in indices.  Amendments to Blanket Sales Certificate, 105 F.E.R.C. ¶ 61,217, ¶ 38, ¶ 53.

[5] "Churning" refers to rapid sales and corresponding purchases of product that result in the appearance of an increase in market demand.  In re W. States Wholesale Natural Gas Antitrust Litig., 346 F. Supp. 2d 1123, 1135 n.10 (D. Nev. 2004).

The Natural Gas Policy Act ("NGPA") deregulated "first sales" of natural gas, which are defined as "any sale to an interstate or intrastate pipeline, LDC or retail customer, or any sale in the chain of transactions prior to a sale to the interstate or intrastate pipeline or LDC or retail customer." Amendments to Blanket Sales Certificate, 105 F.E.R.C. ¶ 61,217, at ¶ 14 (emphasis omitted). Thus, "all sales in the chain from the producer to the ultimate consumer are first sales until the gas is purchased by an interstate pipeline, intrastate pipeline, or LDC." Id. However, a sale "of any volume of natural gas by any interstate pipeline, intrastate pipeline, or local distribution company, or any affiliate thereof" is exempted from first sale status and therefore falls under FERC's jurisdiction "unless such sale is attributable to volumes of natural gas produced by such interstate pipeline, intrastate pipeline, or local distribution company, or any affiliate thereof." 15 U.S.C. § 3301(21). In other words, FERC has jurisdiction over "all sales for resale by interstate and intrastate pipelines and LDCs and their affiliates, other than their sales of their own production." Amendments to Blanket Sales Certificate, 105 F.E.R.C. ¶ 61,217, at ¶ 14.

The Amended Complaint alleges Defendants' sales of natural gas included their own or their affiliates' production. Thus, taking the allegations in the Amended Complaint as true, even if Defendants' alleged wash trades and churning are by definition sales for resale, they are not jurisdictional sales for resale under the first sales exemption because FERC does not have jurisdiction over sales for resale by interstate and intrastate pipelines, LDCs, and their affiliates if they sell their own production. Accordingly, based on the Amended Complaint, the Court cannot conclude Defendants' alleged wash trades and churning are sales for resale within FERC's jurisdiction.

Finally, Defendants argue FERC has stated in two of its previous orders that at least two Defendants' transactions fell within FERC's jurisdiction. FERC issued two orders with respect to Defendants Reliant and Duke Energy in October 2003 and December 2003,

respectively.[6]

"When ruling on a motion to dismiss, the Court may consider the facts alleged in the Complaint, documents attached to the Complaint, documents relied upon but not attached to the Complaint when authenticity is not contested, and matters of which the Court takes judicial notice." Marsh v. San Diego County, 432 F. Supp. 2d 1035, 1043 (S.D. Cal. 2006). Under Federal Rule of Evidence 201, a court may take judicial notice of a fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." As to the second category of judicially noticeable facts, a court appropriately may take judicial notice of matters of public record, including FERC orders. Transmission Agency of N. Cal. v. Sierra Pac. Power Co., 295 F.3d 918, 924 n.3 (9th Cir. 2002); Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001). However, when a court takes judicial notice of a matter of public record, such as another court's opinion, it may not do so "for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." Lee, 250 F.3d at 690 (quoting S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410, 426-27 (3d Cir. 1999); see also Marsh, 432 F. Supp. 2d at 1044 (stating a court may take judicial notice of a document's contents, but not the truth of those contents.)

The Court may take judicial notice of FERC's orders with respect to Reliant and Duke Energy under Fed. R. Evid. 201 because the orders are not subject to reasonable dispute and are capable of accurate and ready determination. The Court, however, may not take judicial notice of the orders for the truth of the facts stated therein, i.e. that Reliant and

---

[6] Order Approving Stipulation & Consent Agreement (Reliant), 105 F.E.R.C. ¶ 61008, ¶ 29 (2003); Order Approving Stipulation & Consent Agreement (Duke), 105 F.E.R.C. ¶ 61307, ¶ 16 (2003).

Duke Energy engaged in jurisdictional sales during the relevant time period. Because this is precisely the purpose for which Reliant and Duke Energy offer the orders, the Court will not take judicial notice of them and therefore will not dismiss Reliant and Duke on that basis.

Because the Amended Complaint does not allege Defendants engaged in jurisdictional sales during the relevant time period, the Court committed clear error in rendering its December 18 Order. Accordingly, the Court will grant Plaintiff's motion to alter or amend judgment and will deny Defendants' motion to dismiss based on preemption.

### B. Filed Rate Doctrine

As an alternative to Defendants' preemption arguments in their motion to dismiss (2:05-CV-01331-PMP-PAL, Doc. #32), Defendants argued the Court should dismiss Plaintiff's claims based on the filed rate doctrine. Because the Court did not address Defendants' filed rate doctrine arguments in its December 18 Order, the Court will do so now.

Defendants argue the allegations in Plaintiff's Amended Complaint are virtually the same as the allegations in previous complaints this Court dismissed under the filed rate doctrine and therefore the Court should dismiss Plaintiff's claims as well. Plaintiff responds that the filed rate doctrine is inapplicable to this case because of the unique nature of the Kansas "full consideration" statute under which it has brought suit. Specifically, Plaintiff argues Kansas' full consideration statute does not require this Court to engage in an overcharge analysis or theorize a but-for competitive price in contravention of the filed rate doctrine. Instead, Plaintiff contends under the full consideration statute Plaintiff may use routine business records, such as invoices or other financial records, to establish the complete measure of Plaintiff's antitrust damages.

The NGA charges FERC with the statutory authority to ensure that all rates charged for the interstate sale of natural gas are just and reasonable. Section 717c(a) of the

NGA provides:

> All rates and charges made, demanded, or received by any natural-gas company for or in connection with the transportation or sale of natural gas subject to the jurisdiction of the Commission, and all rules and regulations affecting or pertaining to such rates or charges, shall be just and reasonable, and any such rate or charge that is not just and reasonable is declared to be unlawful.

15 U.S.C. § 717c(a). In interpreting the scope of FERC's power under the NGA, the Supreme Court has found that, "the authority to decide whether the rates are reasonable is vested by § 4 of the Act solely in the Commission." Ark. La. Gas Co. v. Hall, 453 U.S. 571, 573 (1981).

"The 'filed rate doctrine' prohibits a federally regulated seller of natural gas from charging rates higher than those filed with the Federal Energy Regulatory Commission pursuant to the Natural Gas Act . . . ." Id. Two basic principles underlie the filed rate doctrine: (1) "no court may substitute its own judgment on reasonableness for the judgment of the Commission;" and (2) "the authority to decide whether rates are reasonable is vested solely in FERC." Id. at 577.

The United States Court of Appeals for the Ninth Circuit has explained that "[t]he doctrine applies to rates charged by railroads, natural gas companies, and other interstate operators over whom federal agencies have exclusive power to set rates." Transmission Agency of N. Cal, 295 F.3d at 929 (internal citations omitted). The filed rate doctrine applies both to federal and state causes of action relating to rates established by federal agencies. County of Stanislaus v. Pac. Gas & Elec. Co., 114 F.3d 858, 863 (9th Cir. 1997). To allow recovery under state law would allow a state court, or a federal court applying state law, to undermine the authority of a federal agency and impermissibly would contravene the Supremacy Clause. Id.

In Stanislaus, the plaintiffs, natural gas consumers, sued the defendant public utility company alleging various antitrust violations. Id. at 860. The Ninth Circuit

10

concluded that because FERC reviewed the price set between the plaintiffs and the defendant, the filed rate doctrine barred all claims in the case. Id. at 863. Specifically, the file rate doctrine barred the damages calculation because the Court would have to determine what the rate would have been absent the alleged misconduct. Id. A claim for damages based on a filed rate was too speculative because it would have required a showing that FERC should and would have adopted a hypothetical lower rate. Id.

In In re: Western States Wholesale Natural Gas Antitrust Litigation (Abelman), this Court stated "[t]he critical factor in the filed rate doctrine's application is the nature of the damages the plaintiff s[eeks]." 408 F. Supp. 2d 1055, 1068 (D. Nev. 2005). In Abelman, the Court dismissed the plaintiffs' claims under the filed rate doctrine because the damages the plaintiffs sought would have required the Court "to make a determination as to what a just and reasonable rate would have been in the wholesale natural gas market, thereby usurping a function Congress has explicitly assigned to FERC." Id. at 1067.

The Kansas full consideration statute states:

> any person injured or damaged by any such arrangement, contract, agreement, trust or combination, described in K.S.A. 50-112 and 50-113, and amendments thereto, may sue for and recover in any court of competent jurisdiction in this state, of any person, the full consideration or sum paid by such person for any goods, wares, merchandise and articles included in or advanced or controlled in price by such combination, or the full amount of money borrowed.

Kan. Stat. Ann. § 50-115. Under this statute, Plaintiff's damage calculation will not require the Court to determine what a just and reasonable rate would have been in the natural gas market absent Defendants' alleged misconduct. Rather, Plaintiff will be able to calculate damages by presenting evidence of sums paid to Defendants for natural gas during the relevant time period.

Defendants argue even if the Kansas full consideration damages provision permits Plaintiff to show damages without running afoul of the filed rate doctrine, Plaintiff must prove Defendants' misconduct injured Plaintiff. Defendants argue Plaintiff cannot

prove an antitrust injury, which is a prerequisite to an award of the full consideration damage remedy, without requiring the Court to calculate what rates would have been in the interstate natural gas market absent Defendants' alleged misconduct. Defendants argue if Plaintiff cannot show Defendants' alleged misconduct artificially raised rates, then Plaintiff cannot prove it sustained injury entitling it to recover damages. In addition, Defendants argue Plaintiff expressly alleges in the Amended Complaint that it was injured as a result of having to pay more for natural gas than it would have paid in the absence of Defendants' misconduct. Thus, Defendants argue any attempt by Plaintiff to show an alternative injury is not supported by the allegations in the Amended Complaint.

In response, Plaintiff argues it will not have to establish Defendants charged artificially higher prices to establish injury, but only that Defendants controlled or manipulated prices. Plaintiff argues it is able to show Defendants' conspiracy to manipulate or control prices injured Plaintiff because Plaintiff was deprived of the right to make risk management, resource allocation and other financial decisions in a full and free natural gas market.

Kansas Statutes Annotated § 50-112 states in relevant part:

> All arrangements, contracts, agreements, trusts, or combinations between persons made with a view or which tend to prevent full and free competition in the importation, transportation or sale of articles imported into this state, or in the product, manufacture or sale of articles of domestic growth or product of domestic raw material, . . . and all arrangements, contracts, agreements, trusts or combinations between persons, designed or which tend to advance, reduce or control the price or the cost to the producer or to the consumer of any such products or articles . . . are hereby declared to be against public policy, unlawful and void.

Under this statute, Plaintiff may show Defendants committed an antitrust violation by means other than showing Defendants' alleged misconduct artificially increased natural gas prices because a person violates the statute by agreeing to control prices. The Amended Complaint alleges Defendants agreed to manipulate or control the market prices of natural

12

gas and as a result Plaintiff was deprived of the right to make risk management, resource allocation and other financial decisions in a full and free natural gas market. (See Am. Compl. ¶ 58(b).) Thus, Plaintiff alleged a violation of the statute.

As for injury, the Amended Complaint repeatedly alleges Plaintiff was injured as a result of having to pay more for natural gas than it would have paid absent the alleged misconduct. Under the "Damages" section of the Amended Complaint Plaintiff alleges, "[d]uring the relevant time period of the antitrust violations by the defendants and their co-conspirators, plaintiff purchased natural gas, and by reason of the violations alleged herein, paid more for natural gas than it would have paid in the absence of such antitrust violations. As a result, plaintiff has been injured." (Am. Compl. ¶ 63; see also ¶¶ 53-54, ¶ 56, ¶ 60(d).) However, construing the Amended Complaint in a light most favorable to Plaintiff, Plaintiff also alleges it was injured as a result of being "deprived of the right to make risk management, resource allocation and other financial decisions in a full and free competitive market for natural gas." (Id. at ¶ 60(e).)

Under this injury theory, the Court will not have to determine what a just and reasonable rate would have been in the interstate market. Evidence of price control, price artificiality, or Plaintiff's financial decisions during the relevant time period would not require the Court to determine whether the prices charged during the relevant time period were just and reasonable or to set a but-for competitive price in contravention of the filed rate doctrine.

Moreover, the Court rejects Defendants' argument that any damage award with respect to the alleged misconduct in this case violates the filed rate doctrine because it would effectively impose a different rate on FERC-jurisdictional transactions and upset the federal scheme of uniform rate regulation. At its core, "[t]he filed rate doctrine bars all claims that would involve an assessment of what rates would have been charged in the interstate natural gas market absent the allegedly wrongful conduct." (Defs.' Mot. to

13

Dismiss & Mem. in Support of Mot. to Dismiss [2:05-CV-1331-PMP-PAL, Doc. #32], at 6.) Awarding full consideration damages under the Kansas antitrust statutes would not require the Court to make "an assessment of what rates would have been charged" or to determine the reasonableness of such rates. Further, to the extent Defendants argue that they could pass on any damage award to their customers which might affect future rates, the reasonableness, amount, and lawfulness of such future rates would fall squarely within FERC's jurisdiction. By awarding full consideration damages, the Court would not be setting a hypothetical rate, mandating or imposing a new rate, or deciding the reasonableness of any past, present, or future rate. Consequently, the filed rate doctrine does not bar Plaintiff's Kansas antitrust claims and the Court therefore will deny Defendants' motion to dismiss based on the filed rate doctrine.

**C. Judicial Notice & Motion for Discovery under Fed. R. Civ. P. 56(f)**

Although not requested by the Court, Defendants submitted FERC orders and filings, public disclosure filings with the Securities and Exchange Commission ("SEC"), and court orders in an effort to establish particular affiliations with natural gas pipelines or LDCs during the relevant time period. Defendants request the Court take judicial notice of the facts contained in their submissions and argue that these affiliations provide an independent basis for FERC jurisdiction and therefore provide an alternative ground for dismissal of Plaintiff's claims. In response, Plaintiff contends the Court should not consider Defendants' submissions because the Court did not request them, the premise upon which Defendants' submissions are based is flawed, and Defendants' request for judicial notice does not comport with the judicial notice standard.

Defendants' affiliate argument is based on an exception to the definition of "first sales," which, as discussed above, is a category of sales over which FERC does not have jurisdiction. Under the exception to the first sales definition, a sale "of any volume of natural gas by any interstate pipeline, intrastate pipeline, or local distribution company, or

any affiliate thereof" is not a first sale and therefore falls under FERC's jurisdiction "unless such sale is attributable to volumes of natural gas produced by such interstate pipeline, intrastate pipeline, or local distribution company, or any affiliate thereof."  15 U.S.C. § 3301(21).

Defendants' submissions attempting to establish individual affiliations with pipelines or LDCs only would establish FERC jurisdiction over Defendants' sales as long as Defendants and the pipelines or LDCs with whom they are affiliated did not produce the natural gas they sold.  Plaintiff's Amended Complaint, however, specifically alleges Defendants sold natural gas, "including their own or their affiliates' production, to plaintiff and customers in the State of Kansas, and throughout the United States . . . ." (Am. Compl. at 33.)  Because the Court must take as true the allegations in the Amended Complaint at the motion to dismiss stage, Plaintiff's allegation that Defendants sold their own or their affiliates' production of natural gas would place Defendants' sales outside the first sales exception and therefore outside of FERC's jurisdiction.  Accordingly, the Court will deny Defendants' request to take judicial notice of their submissions.

Because the Court will not take judicial notice of Defendants' submissions or consider any other evidence outside of the pleadings at this stage of the litigation, the Court is not converting Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) into a motion for summary judgment under Rule 56.  Accordingly, the Court will deny Plaintiff's Motion for Discovery and Continuance of Decision Pursuant to FRCP Rule 56(f) because no summary judgment motion is currently before the Court.

///
///
///
///
///

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's Motion to Alter or Amend Judgment Pursuant to Fed. R. Civ. P. 59(e) (2:05-CV-01331-PMP-PAL, Doc. #57) is hereby GRANTED.

IT IS FURTHER ORDERED that the Order granting Defendants' Motion to Dismiss (2:05-CV-01331-PMP-PAL, Doc. #53) is hereby VACATED.

IT IS FURTHER ORDERED Defendants shall file an answer to Plaintiff's Amended Complaint within thirty (30) days from the date of this Order.

IT IS FURTHER ORDERED that Defendants' Request for Judicial Notice in Support of Response to Court's Orders of April 3, 2007 (2:05-CV-01331-PMP-PAL, Doc. #65) is hereby DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Discovery and Continuance of Decision Pursuant to FRCP Rule 56(f) (2:05-CV-01331-PMP-PAL, Doc. #62) is hereby DENIED.

DATED: July 27, 2007.

_____
PHILIP M. PRO
United States District Judge